**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CHRISTOPHER EMMONS** | * | |
| | * | **CIVIL ACTION NO. 17-04674** |
| **Plaintiff** | * | |
| | * | **SECTION "N"** |
| **VERSUS** | * | |
| | * | **JUDGE: KURT D. ENGELHARDT** |
| **C-INNOVATION, L.L.C.** | * | |
| | * | |
| | * | **MAGISTRATE JUDGE:** |
| **Defendant** | * | **JOSEPH C. WILKINSON, JR.** |
| | * | |

*** * * * * * * * * * * * * * * * * * * * * * * * * * * * ***

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Christopher Emmons ("Plaintiff" or "Mr. Emmons"), and hereby submits this *Memorandum in Opposition to Defendant's Motion for Summary Judgment* previously filed by defendant, C-Innovation, L.L.C. ("Defendant" or "C-Innovation").

## I. INTRODUCTION

Defendant's Motion for Summary Judgment – or, more accurately, its Partial Motion for Summary Judgment, since it fails to address key claims made by Plaintiff – is due to be denied for several reasons. Defendant concedes and/or does not address the following key facts: (a) That Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"); (b) that Plaintiff's diagnosis of such constituted a substantial impairment of a major life activity; (c) that, in denying him the ability to take his prescribed medication, Defendant denied Plaintiff reasonable accommodation; and (d) that in any event, Defendant's actions in suspending Plaintiff

based on his prescribed medication amounted to discrimination because Defendant regarded Plaintiff as being disabled. For these reasons and as more fully set forth below, Defendant's Motion for Summary Judgment is due to be denied.

## II. FACTS

Plaintiff, Mr. Emmons, was first diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in 2004.[1] Symptoms of Mr. Emmons's ADHD include extreme trouble focusing and following through on tasks; difficulty listening to and following directions; a failure to follow through and a tendency to become sidetracked; difficulty organizing and initiating work; regularly losing or misplacing items; being easily distracted; forgetfulness; restlessness; and careless mistakes and a lack of attention to detail.[2] Mr. Emmons's ADHD, particularly when untreated, significantly impacts his ability to perform satisfactorily in a work environment.[3] Virtually every task in Plaintiff's life is more difficult as a result of his ADHD.[4]

As a result of his diagnosis, beginning in 2004, Mr. Emmons was prescribed Adderall, a stimulant, amphetamine medication used to treat ADHD, by his physician at the time.[5] With the use of Adderall, Mr. Emmons was immediately and dramatically much more able to maintain focus, listen to and follow directions, complete tasks, be detail-oriented, and maintain organization.[6] He was much less likely to lose or misplace items, fail to follow through, or make careless mistakes.[7]

Prior to being placed on Adderall, Mr. Emmons had been prescribed Strattera, a non-

---

[1] Exhibit 1 ("Ex. 1"), Affidavit of Christopher Emmons, ¶ 1.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] Ex. 1, ¶ 2.
[6] *Id.*
[7] *Id.*

stimulant, non-amphetamine medication.[8] Strattera was not an effective treatment for Mr. Emmons, for whom Adderall proved to be much more effective.[9]

Adderall has been approved by the Food and Drug Administration ("FDA") for treatment of ADHD in adults since 2004.[10]

Mr. Emmons was hired by Defendant, C-Innovation, LLC ("C-Innovation") on March 13, 2012.[11] C-Innovation is a marine services company specializing in remote-operated underwater vehicle ("ROV") services.[12] Mr. Emmons was initially classified as an ROV Technician.[13] Ultimately, Mr. Emmons was promoted to ROV Supervisor.[14]

In Mr. Emmons's capacity as ROV Technician and in his capacity as ROV Supervisor, he was required to work offshore in four-week increments, followed by one to two weeks off work.[15] During his offshore assignments, Mr. Emmons resided full-time on the boat with other C-Innovation employees.[16] Initially, Mr. Emmons continued to take his Adderall as prescribed at all times on the boat.[17] During the time Mr. Emmons was taking his Adderall, he had no written disciplinary measures, and no safety incidents whatsoever.[18] Indeed, by helping Mr. Emmons to maintain his concentration level, focus on tasks, pay attention to detail, and avoid careless mistakes, the Adderall was a key factor in Plaintiff's maintaining safety.[19]

Prior to Plaintiff's hire, he was required to disclose to C-Innovation that he was taking

---

[8] Ex. 1, ¶ 3.
[9] *Id.*
[10] Ex. 1, ¶ 4.
[11] Ex. 1, ¶ 5.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] Ex. 1, ¶ 6.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

Adderall and to provide proof of its appropriate prescription to him.[20] Plaintiff's Adderall prescription and his ADHD diagnosis actually resulted in a delay of his hire, causing him to wait several months before being approved for hire.[21] Ultimately, Plaintiff was approved for hire with C-Innovation's full knowledge of the Adderall prescription and of his ADHD diagnosis.[22]

In November of 2013, following unrelated elbow surgery, Mr. Emmons again disclosed his medications and diagnosis to C-Innovation without incident.[23]

In April of 2015, while working offshore for C-Innovation, Mr. Emmons was confronted by the Operations Coordinator, Bob White ("Mr. White"), via conference call, along with Chad Black ("Mr. Black"), Operations Coordinator, and Matt Nuccio ("Mr. Nuccio"), Safety Coordinator.[24] Mr. White asked Mr. Emmons whether Plaintiff was on amphetamines, and told Mr. Emmons that they were all "quite shocked" that Plaintiff had "tested positive" for amphetamines.[25] Mr. Emmons reiterated to them that he had been properly prescribed Adderall, which is necessary for individuals like Plaintiff who have been diagnosed with ADHD.[26] Mr. Emmons recounted the lengthy process of approval prior to his hire, and further disclosures since that time.[27] Ultimately, Mr. White directed Mr. Emmons to continue to work offshore for the remainder of the assignment, and then to contact Dr. Darren Duet ("Dr. Duet"), a physician employed by C-Innovation.[28]

On April 23, 2015, when Mr. Emmons returned to shore, he contacted Dr. Duet as

---

[20] Ex. 1, ¶ 7.
[21] *Id.*
[22] *Id.*
[23] Ex. 1, ¶ 8.
[24] Ex. 1, ¶ 9.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

advised.[29] Dr. Duet advised Mr. Emmons that ADHD does not exist in adults, that it is a "made-up condition," and that no adult should have to take ADHD medication.[30]

After Dr. Duet made these statements, Mr. Emmons began to record the conversation with Dr. Duet.[31] In the recorded portion of the conversation, when Mr. Emmons stated that Dr. Duet's statement that no adult should have to take ADHD medication was "clearly an opinion by you," Dr. Duet replied: "No, it's not. It's based on science. It's based on the fact that Adderall is not approved for adult [ADHD], okay? Adderall is not FDA-approved for an adult [with ADHD]…The only medication that is approved for the treatment of adult [ADHD] is Strattera [a non-stimulant medication]."[32] This statement was false at the time it was made and remains false, as Adderall has been FDA-approved for use by adults since 2004.[33]

Additionally, in response to Plaintiff's statement that he had initially been ordered to complete his offshore assignment while taking the medication – but now was ordered to cease taking it in order to return offshore and continue to work – Dr. Duet stated: "Because of the medication you have the lab reporting as positive, it becomes a safety-sensitive concern. It's not a safety-sensitive warning, not all operations stop at this point. It is something that can be worked with, as long as it's worked with both medically and reasonably in a reasonable amount of time[.]"[34]

Dr. Duet further advised that Mr. Emmons would now be restricted from all vessels – and therefore unable to work for C-Innovation at all – until he could provide a letter from his physician that he was no longer being prescribed Adderall, and could test negative for the same

[29] Ex. 1, ¶ 10.
[30] *Id.*
[31] Ex. 1, ¶ 11.
[32] Ex. 1, ¶ 12(a).
[33] Ex. 1, ¶¶ 4, 12(a).
[34] Ex. 1, ¶ 12(b).

in a drug screen.[35]

As a result of Dr. Duet's ultimatum to Mr. Emmons, in order to be able to provide for his family, Mr. Emmons immediately ceased taking his prescribed medication.[36] On April 27, 2015, four days after his conversation with Dr. Duet, Mr. Emmons notified C-Innovation (including Dr. Duet, Mr. White, and others) that he was no longer taking Adderall.[37] Mr. Emmons returned to work on April 30, 2015, after completing a negative drug screen.[38]

For the remainder of his employment with C-Innovation, Mr. Emmons was not able to take his properly prescribed medication.[39] As a result, he struggled with focus, concentration, following directions, and the completion of assigned tasks.[40]

On October 12, 2015, Mr. Emmons was issued a written Counseling based on his failure to follow directives, attend to details, and follow through with assignments, resulting in errors in performance.[41] On December 26, 2016, C-Innovation advised Mr. Emmons that he was terminated effective December 31, 2016, based on his failure to return from an unrelated medical leave.[42]

## III. <u>ARGUMENT</u>

*<u>Summary Judgment Standard</u>*

Summary judgment should only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[35] Ex. 1, ¶ 12(c).
[36] Ex. 1, ¶ 13.
[37] *Id.*
[38] *Id.*
[39] Ex. 1, ¶ 14.
[40] *Id.*
[41] Ex. 1, ¶ 15 & Exhibit 1-B thereto.
[42] Ex. 1, ¶ 20.

matter of law."[43] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[44] A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[45]

Once this burden has been met, the non-moving party should come forward with "specific facts showing that there is a genuine issue for trial."[46] All evidence must be considered, but the court does not make credibility determinations.[47]

*Plaintiff is a qualified individual with a disability within the meaning of the ADA.*

The term "disability" under the ADA includes: (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment.[48] To qualify as having an actual disability, a claimant must show that their impairment limits a major life activity.[49] "Major life activities," include activities that are of "central importance to daily life."[50] Examples may include concentrating, learning, and working, among others.[51]

The limitation on a major life activity must be "substantial."[52] The EEOC regulations define the term "substantially limits" as (i) unable to perform a major life activity that the

---

[43] Fed.R.Civ.P. 56(c).
[44] *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
[45] *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548 at 2552, 91 L.Ed.2d 265; *International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc.*, 812 F.2d 219, 222 (5th Cir.1987).
[46] *Izen v. Catalina,* 382 F.3d 566 (5th Cir.2004); Fed.R.Civ.P. 56(e).
[47] *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).
[48] *Demar v. Car–Freshner Corp.*, 49 F.Supp.2d 84, 88 (N.D.N.Y.1999).
[49] *Toyota Motor Mfg. Ky. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).
[50] *Id.*
[51] *Id.*
[52] *Toyota,* 534 U.S. 184, 195.

average person in the general population can perform, or (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the average person in the general population...."[53] According to the EEOC, the following factors should be considered when determining whether an individual is substantially limited in performing a major life activity: 1) the nature and the severity of the impairment, 2) the duration or expected duration of the impairment, 3) the permanent or long term impact.[54]

Here, Defendant does not even address whether Plaintiff is substantially limited in a major life activity, and is thus disabled. Thus, the sole evidence before the Court on this point is that provided by the Plaintiff – that his daily activities were substantially negatively affected by his ADHD, particularly his ability to hear and follow directions and maintain focus on tasks, and he was therefore severely impaired by his ADHD.

Instead, Defendant solely argues that Plaintiff is not a "qualified individual with a disability" because, ostensibly, Plaintiff's properly prescribed Adderall somehow posed a "direct threat" to his own safety and to the safety of others.[55] However, Plaintiff's evidence – and Defendant's own conduct – establish genuine issues of material fact as to whether Plaintiff constituted any threat whatsoever to himself or the public. As an initial matter, <u>Defendant employed Plaintiff for a period of years while approving his prescription for Adderall.</u> Plaintiff in fact was forced to delay his hire as a result of the prescription, while Defendant considered his Adderall prescription, which it ultimately approved. Second, even once Defendant abruptly decided that Plaintiff had essentially failed a drug screen, <u>Defendant left Plaintiff in place on board the vessel until the completion of his assignment.</u> Indeed, once Plaintiff was on dry land

---

[53] *See* 29 C.F.R. § 1630.2(j).
[54] 29 C.F.R. § 1630.2(j).
[55] *Defendant's Memorandum in Support of Motion for Summary Judgment,* pp. 14-15.

and spoke to Dr. Duet, Dr. Duet advised him that the issue was merely a "safety-sensitive concern," which could be worked with in a reasonable manner – not a "safety-sensitive warning," requiring that operations cease.[56] Finally, and perhaps most tellingly, Plaintiff's only safety-related job performance issue of any kind occurred once Defendant forced him to stop taking the Adderall, when he was issued a Counseling.[57]

Thus, Defendant has offered no evidence at all, nor pointed to any lack of the same, on the issue of whether Plaintiff has a disability; on the issue of whether he is qualified, Plaintiff has offered evidence establishing genuine issues of material fact. Defendant is therefore not entitled to summary judgment on this basis.

*Defendant's insistence that Plaintiff cease taking medication he had successfully taken for years was the definition of a failure of reasonable accommodation.*

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability."[58] Discrimination includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship."[59]

Under the ADA, a reasonable accommodation may include appropriate modifications to both policies and examinations.[60] The ADA's implementing regulations also indicate that reasonable accommodation include modifications or adjustments that allow an individual to enjoy equal benefits and privileges of employment to those of others.[61]

Here, the undisputed evidence before the Court is that Adderall was the only medication

[56] Ex. 1 & Exhibit 1-A thereto.
[57] Ex. 1 & Exhibit 1-B thereto.
[58] 42 U.S.C. § 12112(a).
[59] 42 U.S.C. § 12112(b)(5)(A).
[60] 42 U.S.C. § 12111(9).
[61] 29 C.F.R. § 1630.2(*o* )(1).

which afforded Plaintiff the ability to concentrate fully, follow directions, focus, and otherwise perform his job appropriately. Further, Defendant's own conduct establishes that continuing to allow Plaintiff to take his Adderall did not constitute an undue hardship, and was in fact a reasonable accommodation. Defendant <u>had in fact allowed Plaintiff to take the medication for years without any incident or complaint</u>, and even when notifying Plaintiff of an ostensibly failed drug screen, <u>Defendant kept him on the boat</u> for the duration of his assignment. Later, in a taped conversation, Dr. Duet described the Adderall as a "concern", not a "warning," and as something that could be worked with in a reasonable manner – in other words, a subject on which Defendant had the discretion and ability to accommodate Plaintiff, but simply chose not to do so. Clearly, Plaintiff has established the existence of a genuine issue of material fact on the issue of reasonable accommodation, and Defendant's Motion for Summary Judgment is thus due to be denied on this basis.

<u>*Even if Plaintiff is not a qualified individual with a disability, which he is, Defendant has essentially admitted that it regards him as having a disability.*</u>

Under the ADA [a]n individual is "regarded as" disabled when a covered entity mistakenly believes that: (1) a person has a physical impairment that substantially limits one or more major life activities; or (2) an actual, non-limiting impairment substantially limits one or more major life activities. In both situations, the covered entity must entertain some misperception regarding the individual—either that he has a substantially limiting impairment that he does not have or the impairment is not so limiting as believed.[62]

"Under the 'regarded as' prong, the disability status of the plaintiff turns not on the plaintiff's physical condition, but rather on how the plaintiff was perceived and treated by those

[62] *Aldrup v. Caldera,* 274 F.3d 282, 287 (5th Cir. 2001)

alleged to have taken discriminatory action."[63] Indeed, the 'regarded as' prong of the ADA "is intended to encompass those situations in which an employee regards someone as disabled based on certain stereotypes or myths."[64]

Here, Defendant essentially admits to buying in to a myth about individuals with ADHD who take properly prescribed stimulant medications: Rather than understanding this for what it is – an accommodation that makes their vessels safer, in that it enables such individuals to concentrate, focus, and attend to details in the manner of a non-ADHD employee – Defendant has instead characterized Plaintiff's required medication as a "safety issue" and a "direct threat." Indeed, Plaintiff's uncontroverted testimony via affidavit is that Defendant's physician characterized ADHD in adults as a "made-up disease," and falsely claimed that neither Adderall nor any other stimulant was approved for use in adults. Defendant's hostility toward Plaintiff's diagnosis and particularly toward its treatment was not only palpable, but explicit. Clearly, this case is exactly the type of case for which the "regarded as" prong was developed.

*Plaintiff was restricted from all vessels and from any marine activity until he gave up his accommodation, a clearly adverse employment action.*

Under the ADA, as in the Title VII context, adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands.[65] Here, as Plaintiff's evidence demonstrates, Defendant restricted Plaintiff from any marine activity and from all vessels due to his chosen disability treatment. Defendant then reprimanded Plaintiff for inattention to detail, once he was forced to return to work without any accommodation. Both of these actions constitute adverse employment actions – in addition to Defendant's denial of

---

[63] *Deas v. River West, L.P.*, 152 F.3d 471, 476 n. 9 (5th Cir. 1998).

[64] *Bernard v. Doskocil Cos., Inc.*, 861 F.Supp. 1006, 1013 n. 13 (D.Kan.1994).

[65] *Dupre v. Harris County Hosp. Dist.*, 8 F.Supp.2d 908, 919 (S. D. Tex. 1998) (citing *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir.1996) (reassignment to different division not adverse employment action); *Yates v. Avco Corp.* 819 F.2d 630, 638 (6th Cir.1987); *Lulac Councils 4433 & 4436 v. City of Galveston*, 979 F.Supp. 514, 518 (S.D.Tex.1997).

Plaintiff's reasonable accommodation – and Defendant's motion is therefore due to be denied on that basis.

## IV. CONCLUSION

For these reasons, Christopher Emmons respectfully requests that the *Motion for Summary Judgment* filed by defendant be denied.

Respectfully submitted by:

**PERAGINE LAW FIRM, L.L.C.**

*/s/ Christa H. Forrester*
Christa Hayes Forrester (La. Bar No. 33133)
527 East Boston Street, Suite 201
Covington, Louisiana 70433
Telephone: (985) 292-3500
Telecopy: (985) 292-3501
E-mail: christie@plalaw.com

Counsel for plaintiff,
*Christopher Emmons*

## CERTIFICATE OF SERVICE

I certify that on the 12th day of March, 2018, a copy of the above and foregoing *Memorandum in Opposition to Defendant's Motion for Summary Judgment* was filed with the clerk of court using the CM/ECF system. Notice of this filing will be served upon all parties by operation of the Court's electronic filing system.

*/s/ Christa H. Forrester*
Christa H. Forrester